UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YELENA LEVITIN, and CHICAGO SURGICAL CLINIC, an Illinois Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWEST COMMUNITY, HOSPITAL, an Illinois Not For Profit Corporation, ADVANCED SURGICAL ASSOCIATES, S.C., an Illinois Corporation, ALAN B. LOREN, WILLIAM D. SOPER, and DANIEL R. CONWAY,<br><br>Defendants. | Case No. 13 C 5553<br><br>District Judge Feinerman<br><br>Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

On August 14, 2014, plaintiffs filed a fifty-four page motion to compel (doc. # 47), which has been fully briefed (docs. ## 55, 56). This Court ruled on eight of the eleven arguments plaintiffs raised in support of their motion in a written order on October 2, 2014 (doc. # 62). After further rulings on the record on October 23, 2014, only one issue remains (doc. # 66): whether the Court should compel defendants to produce records and information developed during professional review actions at defendant Northwest Community Hospital involving Plaintiff Dr. Levitin and other surgeons whom Dr. Levitin contends are "similarly situated" (Pls.' Mot. to Compel at 31 and n.15). Defendants have withheld these documents on the basis of a "peer review" or "professional review" privilege, which defendants contend arises under the Illinois Medical Studies Act ("IMSA"), 735 ILCS 5/8-2101 (Pls.' Mot. to Compel at 31).

---

[1]On August 15, 2014, this case was referred to this Court pursuant to Local Rule 72.1 to hold proceedings related to discovery supervision (doc. # 50).

Plaintiffs argue that these documents are not privileged, and are relevant to their Title VII claim against defendants.

For the reasons that follow, we agree. The Court therefore overrules defendants' assertion of a peer review privilege, and requires that responsive documents withheld on the basis of that privilege be produced.

### I.

The IMSA provides that all information

> used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services, except that in any . . . hospital or ambulatory surgical treatment center proceeding to decide upon a physician's staff privileges, or in any judicial review of either, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based.

735 ILCS 5/8-2101. The IMSA privilege (which we will refer to as the "peer review privilege") is intended "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Roach v. Springfield Clinic*, 623 N.E.2d 246, 251 (Ill. 1993). As the party seeking to invoke the privilege, defendants bear the burden of establishing that the privilege applies. *See Cornejo v. Mercy Hosp. and Med. Ctr., et al.*, No. 12-1675, 2014 WL 4817806, at *3 (N.D. Ill. Sept. 15, 2014).

Plaintiffs assert two arguments in support of their position that defendants have improperly withheld responsive documents based on the Illinois peer review privilege. We address each in turn.

## A.

Plaintiffs contend that defendants have withheld documents, such as credentialing and personnel files, which are not within the scope of the peer review privilege under Illinois law (Pl.'s Mot. to Compel at 31-32 n.15). Defendants do not respond to this argument, and, indeed, Illinois state courts and courts in this district agree that the peer review privilege protects documents generated specifically for the use of a peer review committee, but not documents generated before a peer review process begins or after it ends, or documents created in the ordinary course of business, even if they are later used by a committee in a peer review process. *Cornejo*, 2014 WL 4817806, at *2-3 (citing *Chicago Trust Co. v. Cook County Hosp.*, 698 N.E.2d 641, 646, 649 (Ill. App. 1998); *Ardisana v. Nw. Cmty. Hosp., Inc.*, 795 N.E.2d 964, 971 (Ill. App. 2003)). Thus, we agree with plaintiffs that any documents not generated specifically for the peer review process are not covered by the peer review privilege.

## B.

More fundamentally, plaintiffs argue that the peer review privilege created by Illinois law does not apply at all in this federal lawsuit that alleges both Title VII and state law claims (Pl.'s Mot. to Compel at 33). We agree.

Where state law does not supply the rule of decision, federal courts are not required to apply state law in determining whether the information a plaintiff seeks is privileged. *Mem'l Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 & n.3 (7th Cir. 1981). This holds true even if the plaintiff pleads, in addition to federal law claims, supplemental state law claims for which the information sought would also be relevant. *Id.* at 1061 n.3. That said, the Seventh Circuit in *Shadur* held that a "strong policy of comity . . . impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and

procedural policy." *Id.* at 1061 (internal citations and quotations omitted). The Seventh Circuit emphasized that "in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises" so that the court may "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Shadur*, 664 F.2d at 1061-62 (internal citations and quotations omitted).

In *Shadur*, the plaintiff claimed that the defendants had used the hospital review committee apparatus discriminatorily to deny him staff privileges at the hospital in furtherance of an unlawful restraint of trade. *Shadur*, 664 F.2d at 1062. The Seventh Circuit determined that the evidence sought – the hospital's records of disciplinary proceedings against other doctors to show that doctors with comparable or worse records were not denied staff privileges – was "relevant and possibly crucial" to plaintiff's antitrust claim, which arose out of the conduct of the peer review process itself. *Id.* at 1062-63. Thus, obtaining the information in question would serve not only the plaintiff's interest in pursuing his individual claim, but also "the strong public interest in open and fair competition which is embodied in the Sherman Act under which the case arises." *Id.* at 1062.

On the other hand, the interest underlying the peer review privilege, while "also substantial," focuses on "bolster[ing] the effectiveness of in-hospital peer group review committees," which operate to ensure adequate medical care and treatment for patients. *Shadur*, 664 F.2d at 1062. Protecting from disclosure the information developed in peer review proceedings "generally [would] have little impact on the plaintiff's ability to prove a meritorious claim" in a medical malpractice action (where the crucial issue is whether the defendant was in

4

fact negligent in his care of the patient). The antitrust case in *Shadur* presented a very different set of factual circumstances, and thus a very different balance. *Id.* As the Seventh Circuit explained, "[t]o recognize hospital disciplinary proceedings as privileged, regardless of the purpose for which disclosure is sought, would in effect grant such committees, their members and participants absolute immunity from prosecution for all statements made and actions taken in the context of such proceedings." *Id.* at 1063. Illinois law does not recognize a peer review privilege of that vast scope. *Id.*, citing *Matviuw v. Johnson*, 388 N.E.2d 795 (Ill. App. 1979) (holding that the IMSA does not bar a defamation suit based on statements made in bad faith at disciplinary proceedings). For these reasons, the Seventh Circuit declined to apply the Illinois peer review privilege to bar discovery of evidence relevant to the plaintiff's antitrust claim.

Defendants argue that in this case, when balancing between the need for the requested discovery and the importance of the state privilege, the state privilege wins out (doc. # 55: Defs.' Opp'n at 15). We respectfully disagree. Under the analysis in *Shadur*, defendants may not use the peer review privilege to block discovery of relevant information in this case.

*First*, Title VII represents an important national policy of eliminating employment discrimination. While the peer review evidence plaintiffs seek is not necessarily the only evidence that could support their Title VII hostile work environment claim, it is relevant evidence that would support the "great, if not compelling government interest" in exposing and eradicating "invidious discrimination." *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182, 193 (1990). The importance of this federal policy in the context of the peer review process is reflected in the Health Care Quality Improvement Act, 42 U.S.C. § 11111(a)(1), which creates an immunity from damages under state or federal law for the actions of a qualifying peer review body – *except* for damages claimed under Title VII or other civil rights laws. Indeed, when confronting Title

5

VII claims of discrimination in hospital disciplinary and review proceedings, both the Eleventh and Fourth Circuits have held that "'the interest in facilitating the eradication of discrimination by providing perhaps the only evidence that can establish its occurrence outweighs the interest in promoting candor in the medical peer review process.'" *Adkins v. Christie*, 488 F.3d 1324, 1329 (11th Cir. 2007) (quoting *Virmani v. Novant Health* Inc., 259 F.3d 284, 289 (4th Cir. 2001)).

*Second*, "the importance of the relationship or policy sought to be furthered by the [peer review] privilege" would not be protected by recognizing it in this case. *Shadur*, 664 F.2d at 1061-62. As the Seventh Circuit explained, the peer review privilege seeks to improve the effectiveness of hospital peer review committees, which operate to ensure adequate medical care and treatment for patients. *Id.* at 1062. The Illinois interest in applying the peer review privilege is thus at its strongest, for example, in a malpractice case, where the disclosure of the peer review information would not advance the malpractice case but could chill the candor of those proceedings and thus undermine their effectiveness.

Here, by contrast, the peer review information is at the heart of plaintiffs' claim. Plaintiffs contend that defendants' hospital peer review committees acted discriminatorily and contributed to the hostile work environment that Dr. Levitin allegedly suffered. A hospital review committee that acts against a doctor in order to discriminate against the doctor, rather than to protect the level of medical care his or her patients receive, undermines rather than furthers the purpose of the peer review privilege. We do not expect that Illinois would assert a strong (or any) interest in having its peer review privilege – which is not absolute in any event – used to prevent disclosure of evidence that bears on a discrimination claim. Thus, the balance here weighs in favor of allowing plaintiffs to access evidence that will help determine whether Dr. Levitin was treated differently in defendants' peer review proceedings than other doctors.

We have considered defendants' contrary arguments, but find them unavailing. Defendants argue that plaintiffs' interest in other surgeons' peer review material is minimal because it is "irrelevant" to plaintiffs' claims (Defs.' Opp'n at 15-16). That argument disregards the district judge's opinion denying defendants' motion to dismiss the Title VII claim. In that opinion, the district judge explained that the basis for plaintiffs' hostile work environment claim is that "defendants created a double standard, whereby . . . corrective action . . . policies were used to harass, retaliate against and damage Plaintiffs, as the only female, Russian and Jewish general surgeon on staff . . . while similar, the same, or more serious surgical events by male surgeons . . . who were also not Russian or Jewish, were swept under the carpet . . ." *Levitin v. Nw. Cmty. Hosp.*, -- F. Supp. 2d --, 2014 WL 3940012, at *12 (N.D. Ill. Aug. 12, 2014) (quoting Compl. at ¶¶ 10, 108, 111, 217, 219). Because the district judge determined that this and other allegations were sufficient to state a Title VII hostile work environment claim, this Court previously rejected defendants' argument that discovery requests pertaining to surgeons who are not parties to this suit are overbroad (*see* doc. # 62: 10/2/14 Order at 6). For this same reason, we reject defendants' contention that such discovery is irrelevant to plaintiffs' Title VII claim.

We also do not accept defendants' argument that *Shadur* requires that the discovery sought be "essential" to a plaintiff's claim to negate the peer review privilege (Defs.' Opp'n at 15-16). While the importance of the discovery sought to the plaintiff's ability to establish a claim was an important factor in the Seventh Circuit's decision, the Seventh Circuit did not hold that the information sought must be "essential" to the plaintiff's claim. *Shadur*, 664 F.2d at 1063. Rather, the Seventh Circuit held that courts must consider the purpose for which disclosure of hospital peer review materials is sought in deciding whether to apply the peer review privilege. *Id.* In that case, the appeals court found that the requested discovery was "relevant and possibly

7

crucial" to plaintiff's antitrust claim, and in light of the compelling public policy favoring antitrust actions, refused to give effect to the Illinois peer review privilege. *Id.* at 1062-63.

Finally, defendants' argument that the documents requested are privileged because doctors have a privacy interest in their participation in peer review proceedings (Defs.' Opp'n at 15) misses the mark. For this argument, defendants quote from this Court's opinion in *Shakman v. City of Chicago*, No. 69 C 2145, 2014 WL 711010, at *4-5 (N.D. Ill. Feb. 21, 2014), where we explained that employees have a legitimate, but not absolute, privacy interest in their employment records. We recognize, as the Eleventh Circuit did in *Adkins*, that health care providers "have a legitimate interest in keeping peer review documents confidential and in protecting them from widespread dissemination." *Adkins*, 488 F.3d at 1329. "However, 'there is an important distinction between privilege and protection of documents, [with] the former operating to shield the documents from production in the first instance, [and] the latter operating to preserve confidentiality when produced.'" *Id.* (quoting *Virmani*, 259 F.3d at 288 n. 4). In the absence of the privilege, "district courts are well-equipped with a variety of mechanisms" to ensure that peer review materials are protected. *Adkins*, 488 F.3d at 1329. We note that there is in place in this case a confidentiality order (doc. # 18) that may be used, where appropriate, to govern the disclosure and use of the peer review documents.

## CONCLUSION

For the foregoing reasons, we grant plaintiffs' motion to compel documents withheld by defendants on the grounds of "peer review" or "professional review" or IMSA privilege.[2] Defendants shall produce the documents withheld on the basis of this privilege by November 21,

---

[2] We read defendants' claims of a peer review privilege as being based on Illinois law. To the extent that they also more generally argue that a federal common law peer review privilege should be adopted under Federal Rule of Evidence 501, the foregoing analysis demonstrates why the creation of such a federal common law privilege is not warranted.

8

2014. With this ruling, all matters raised by plaintiffs' motion to compel (doc. # 47) have been decided.

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: October 31, 2014