IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YELENA LEVITIN, and | ) | |
| CHICAGO SURGICAL CLINIC, an Illinois | ) | |
| Corporation, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | NO. 13 C 5553 |
| NORTHWEST COMMUNITY HOSPITAL, et al. | ) | Honorable Gary Feinerman, |
| | ) | Presiding |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PAY
PLAINTIFFS' EXPERTS THEIR REASONABLE FEES FOR
<u>TIME SPENT RESPONDING TO DISCOVERY</u>**

Plaintiffs, by and through their attorney, move this Court to Compel Defendants to Pay Plaintiffs' Experts their Reasonable Fees for Time Spent Responding to Discovery and, in support, state as follows.

## I. INTRODUCTION

Plaintiffs disclosed five experts pursuant to Federal Rule of Civil Procedure 26 (a) (2): Robert A. Wade, Keith Emmons, William Pearson, Amy Koler and Michael Rock (rebuttal only). Three of Plaintiffs' experts (Wade, Emmons and Koler) do not and did not reside in Chicago. Initially, Defendants set dates to depose all of Plaintiffs' experts but refused to take the out of town experts' depositions in Chicago, IL. Plaintiffs' moved for entry of a Protective Order to require that the depositions of Plaintiffs' three out of town experts be taken in Chicago, IL and that Defendants' pay the reasonable costs and expenses of Plaintiffs' experts deposed by Defendants including travel expenses pursuant to F. R. Civ. P. 26 (b) (4) ( E). (Dkt. 133).

1

Thereafter, Defendants' decided to take the depositions of three of Plaintiffs' experts: Wade, Emmons and Pearson, agreed to take the depositions in Chicago and to pay reasonable expenses associated with the depositions as required by Fed. R. Civ. P. 26 (a) including the deponents travel expenses. Since these experts issued invoices associated with their time devoted to responding to discovery and preparing for and attending their depositions and costs and expenses related thereto in the fall of 2015, the parties have exchanged numerous Rule 37.2 emails and had Rule 37.2 telephone conferences in attempt to resolve Defendants' refusal to pay Plaintiffs' three experts' invoices which are set forth in detail in § V below. The Rule 37.2 communications have been unsuccessful in getting Defendants' to pay Plaintiffs' experts.

## II.  BACKGROUND

This case is about Defendants' hostile work environment and adverse, discriminatory treatment of and retaliation against Dr. Yelena Levitin on the basis of her gender, ethnicity, and religion, efforts to eliminate Levitin as a competitor of Defendants ASA and its general surgeons including Conway, Soper and Loren within the Northwest Community Hospital ("NCH") system of surgical medical providers by, among other things, improperly revoking her staff privileges, defaming her and tortiously interfering with her legitimate existing and future business expectations.

Defendants hostile work environment persisted for four years, starting first with Defendant Conway's bullying of Levitin based on her gender, her ethnicity and religion, Defendants criticizing her professional judgment, challenging her professional medical skills, and falsely accusing her of having disastrous outcomes in her cases in front of patients, colleagues and NCH staff; interfered with her patient relationships by telling patients she had

2

multiple disastrous outcomes, which was not true, but caused the patients to switch to Conway's practice, Advanced Surgical Associates (ASA) for their surgeries; told the members of the SAC that she was slow and did not have good surgical skills, getting multiple complications; and complained about Levitin's surgical skills in the physician's lounge in front of Levitin's colleagues. Because Defendants did not take steps sufficient to address Levitin's repeated complaints, she hired legal counsel to address them. Beginning on or about September 9, 2009, Defendants retaliated by subjecting Levitin, her practice and her cases and those of her employees to an unwarranted higher level of scrutiny compared to similarly situated male, non-Jewish and non-Eastern European general surgeons, including Defendants. That harassment included a bad faith corrective action process that persisted from 2010 through 2012, included an eight-day hearing before a Judicial Review Committee which found in Levitin's favor in a 25-page decision, included an unfounded termination of Levitin's privileges in violation of the HCQIA, the Illinois Hospital Licensing Act and NCH's Bylaws and the filing of a baseless adverse report with the National Practitioner Data Bank.

Discovery in the case included in excess of 12, 000 documents produced by Plaintiffs and approximately 60, 000 documents produced by Defendants. Plaintiffs took approximately eight (8) fact depositions, three of which were Rule 30 (b)(6) witnesses, and Defendants took at least five (5) fact depositions. Plaintiffs identified five (5) experts witnesses pursuant to Rule 26 (a) (2) addressing governance issues for hospitals and health care entities (Wade); requirements for bylaws for hospitals in Illinois under HCQIA, the Illinois Hospital Licensing Act, the Joint Commission Standards and the AMA policies (Emmons); peer review processes generally and the NCH's peer review processes in particular including a comparison of its treatment of Levitin

compared to similarly situated general surgeons, including Defendants Conway, Soper and Loren (Koler); damages (Pearson); and issues related to a EGD procedure in which Levitin was involved (Rock). Defendants identified two (2) Rule 26 (a) (2) experts, a rebuttal damages expert (Snow) and Burroughs, who opined on all of the areas of expertise addressed by Plaintiffs' five experts' opinions.

Plaintiffs deposed both of Defendants' experts-John Burroughs and Susan Snow. Defendants deposed three of Plaintiffs' experts- Wade, Emmons and Pearson.

Defendants filed a motion to dismiss the Title VII claim, a Motion for Partial Judgment as to the Title VII claim and a Motion for Summary Judgment as to the Title VII claim, on the issues of immunity from damages liability for the peer review proceedings Plaintiffs allege to have been a sham and conducted in retaliation for her complaints about Defendants' hostile work environment, and as to the defamation claim on statute of limitations grounds. Plaintiffs filed a partial motion for summary judgment on the immunity issues. Defendants identified in excess of 270 exhibits filed in support and opposition to summary judgment by the parties and, defendants alone, submitted 75 statements of fact in support of their motion for summary judgment, only one of which addressed the four years of acts and events comprising the hostile work environment and peer review process at the heart of the case.

### III.    PLAINTIFFS' EXPERTS DEPOSED BY DEFENDANTS

### A.    Robert A. Wade Deposition

Plaintiffs' expert Robert A. Wade submitted a 16 page, single spaced Rule 26 (a) (2) report on August 14, 2015 pursuant to Court order. He reviewed voluminous documents in connection with the preparation of his reports and opinions. (Ex. F-3). Defendants deposed Wade

on October 20, 2015 at Defense counsel's Chicago IL offices. No notice of deposition was issued for Wade's deposition and Defendants did not at any time indicate that Wade would be deposed for less than the 7 hours allowed pursuant to Fed. R. Civ. P. 30 (d) (1). Defendants' deposed Wade for approximately 5.5 hours resulting in a transcript of approximately 194 pages.

Defendants questioned Wade about his opinions expressed in his August 14, 2015 report and about Defense expert Jon Burroughs' rebuttal report in which he addressed certain of Wade's opinions. (Ex. F -1 (excerpts of Wade Dep. Re: Burroughs); Ex. F-2 (excerpts of Burroughs' rebuttal report relating to Wade's opinions)).

Wade submitted an invoice in the amount of $ 13, 988.25 comprised of $ 1, 634.25 in travel related expenses from South Bend Indiana to Chicago and back, an overnight stay and food expenses and 21.3 hours of deposition preparation time at his customary $ 580.00 hourly rate. (Ex. A). Wade's education, training and area of expertise is included in Ex. A (1).[1] Evidence that the rates of comparably respected available experts in Wade's area of expertise are at or greater than $580.00 per hour as is reflected in Ex. A ¶¶ 12, 13.

## B.   Keith E. Emmons Deposition

Plaintiffs' expert Keith E. Emmons submitted a 24 page, single spaced Rule 26 (a) (2) report on August 14, 2015 and a 7 page, single spaced rebuttal report on September 24, 2015 pursuant to Court order. He reviewed voluminous documents in connection with the preparation of his reports and opinions. (Ex. G-3). Defendants deposed Emmons on October 21, 2015 at Defense counsel's Chicago IL offices. No notice of deposition was issued for Emmons

---

[1] Defendants' moved to strike Wade's Report and Opinions under *Daubert* in which, while conceding his qualifications, they argued that as an attorney he should not be permitted to provide what they characterized as legal opinions and because he had not provided enough consultations as a hospital governance expert. (Dkt. 142, 144). Plaintiffs' response is Dkt. 230.

deposition and Defendants did not at any time indicate that Emmons would be deposed for less than the 7 hours allowed pursuant to Fed. R. Civ. P. 30 (d) (1). Defendants' deposed Emmons for approximately 2.4 hours resulting in a transcript of approximately 84 pages.

Defendants questioned Emmons about his opinions expressed in his August 14, 2015 and September 24, 2015 rebuttal reports and about Defense expert Jon Burroughs' rebuttal report in which he addressed certain of Emmons' opinions. (Ex. G -1 (excerpts of Emmons' Dep. Re: Burroughs); Ex. G-2 (excerpts of Burroughs' rebuttal report relating to Emmons' opinions)).

Emmons submitted an invoice in the amount of $ 10, 362.27 comprised of $ 199.30 in travel related expenses from Champaign, Illinois to Chicago and back for his deposition and 14.5 hours of deposition preparation time at his customary $ 375.00 hourly rate. (Ex. B). Emmons' education, training and area of expertise is included in Ex. B -1 (a), 1 (b) and 1 (c). [2]Evidence that the rates of comparably respected available experts in Emmons' area of expertise are at or greater than $375.00 per hour as is reflected in Ex. B ¶¶ 9-12.

**C.    William Pearson's Deposition**

Plaintiffs' expert William Pearson submitted a 15 page, single spaced Rule 26 (a) (2) report with 12 Exhibits of data (Ex. H-3 (a)) and analyses and 7 Appendices on August 14, 2015 pursuant to Court order. He reviewed voluminous documents in connection with the preparation of his reports and opinions. (Ex. H-3 (b)). Defendants deposed Pearson on October 22, 2015 at Defense counsel's Chicago IL offices.  No notice of deposition was issued for Pearson's deposition and Defendants did not at any time indicate that Pearson would be deposed for less than the 7 hours allowed pursuant to Fed. R. Civ. P. 30 (d) (1). Defendants' deposed Pearson for

---

[2] Defendants' moved to strike Emmons' Report and Opinions under *Daubert* but they did not challenge is experience and training. (Dkt. 145, 147). Plaintiffs' Response is found at Dkt. 229.

approximately 5.25 hours resulting in a transcript of approximately 131 pages.

Defendants questioned Pearson about his opinions expressed in his August 14, 2015 reports and about Defense rebuttal expert Susan Snow's report and opinions in which she argued that Pearson should have mitigated all of Levitin's losses. (Ex. H -2 (excerpts of Pearson's Dep. Re: Snow) and about Pearson's opinions as to the impact of Defendants' National Practitioner Data Bank Report which were rebutted by Defense expert Burroughs (H-1 (excerpts of Burroughs' rebuttal report relating to Pearson's opinions)).

Pearson submitted an invoice in the amount of $ 11, 720.00 comprised of $ 20.00 in parking expense on the day of his deposition and 39 hours of deposition preparation time at his customary $ 300.00 hourly rate. (Ex. B). Pearson's education, training and area of expertise is included in Ex. C (1). Evidence that the rates of comparably respected available experts in Pearson's area of expertise are at or greater than $300.00 per hour as is reflected in Ex. C ¶¶ 8-10. Defendants have not filed a *Daubert* motion attacking Pearson's qualifications as an expert qualified to make wage loss damages analyses.

## IV.    ARGUMENT

### A. Federal Rule 26 (b) (4) (E) requires Defendants to pay Plaintiffs' Experts a Reasonable Fees for Time Spent in Responding to Discovery and A Number Of Types of Expenses.

Fed. R. Civ. P. 26 (b) (4) (E) requires in relevant part that the party seeking discovery of experts who *may* testify at trial "(i) pay the expert a reasonable fee for time spent responding to discovery under Rule 26 (b) (4) (A) . . .." Rule 26 (b) (4) (A) permits a party to depose any person identified as an expert whose opinions may be presented at trial after that person has provided a report, if a report is required under Rule 26 (a) (2) (B).

The courts in this district have made clear that the Rule mandates that the party seeking discovery, here Defendants, must pay for the expert's preparation time for the deposition and in the deposition because the Rule calls for compensation for "time spent in responding to discovery", not just time spent in a deposition (*Profile Products v. Soil Management Technologies,* 155 F. Supp. 2d 880, 886 (N.D. Ill. 2001), citing *Collins v. Village of Woodridge,* 197 F.R.D. 354 (N.D. Ill. 1999)) and for reasonable and substantially documented travel time expenses. *LG Electronics U.S.A.*, *Inc. v. Whirlpool Corp.,* No. 08-c-0242, 2011 WL 5008425 at * 5 (N.D. Ill. Oct. 20, 2011). The fact that an expert may not testify at trial either because the proffering party does not call them or their testimony is excluded by the court does not relieve the party seeking discovery from paying these fees and expenses; therefore, the fact that Defendants have sought to exclude Wade's and Emmons' opinions is irrelevant to their obligation to compensate these experts. *See e.g. Cunningham Charter Corp. v. Learjet, Inc.,* No. 07-cv-0233, 2011 WL 1549214 (S.D. Ill. Apr. 22, 2011) (reasoning that experts' costs would be granted even though expert's testimony was excluded); *Brown v. Butler,* 30 F. App'x 870, 876 (10th Cir. 2002) (recognizing that the choice not to call an expert witness at trial does not preclude an award of expert discovery costs); *Ndubizu v. Drexel University,* No. 07-3068, 2011 WL 6046816, at *5 (E.D. Pa. Nov. 16, 2011) (requiring payment for deposition of experts who did not testify at trial or testify in accordance with their reports based on a plain reading of the Rules).

### B. Plaintiffs' Experts' Fees Are Reasonable.

The reasonableness of the fees claimed by the experts is assessed according to several factors: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available

experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the local cost of living in the particular geographic area; (6) the fee being charged by the expert to the party who retained him; (7) fees traditionally charged by the expert on related matters; and (8) any other factor likely to be of assistance in balancing the interests implicated by Rule 26. *McClain v. Owens-Corning Fiberglass Corp.,* No. 89 C 6226, 1996 WL 650524, at * 3 (N.D.Ill. Nov. 7, 1996) (citing cases).

In the instant case, the evidence submitted establish that Plaintiffs' experts' hourly rates set forth in their invoices for time spent in responding to discovery, preparing for their deposition and attending their depositions were equal to or less than those of comparable experts in their area of expertise, with the education and training necessary to provide the expert insight sought, was the same as the rates charged Plaintiffs for the expert opinions, for the relevant geographical location, and were their usually hourly rate.

Wade's rate of $580 per hour is his usually hourly rate, is the rate charged Plaintiffs as his report makes clear, is a rate equal to or less than that charged by attorneys who have comparable experience and training in providing hospital governance counsel (Ex. A ¶¶ 10-13) and is a rate that is set by Wade for his nationwide practice. Interestingly, although he is not an attorney and therefore does not have the insight required to opinion on the legal governance issues that Wade opined on and lives in New Hampshire where the cost of living is less than Chicago, Defendants governance expert Burroughs charged $500 per hour.

Plaintiffs' expert Emmons' invoice lists an hourly rate of $375 per hour for work performed in 2015. This is the same rate Emmons charged Plaintiffs for his work in preparing his expert report and opinions. Emmons hourly rate is his usually hourly rate charged in the

9

Champaign Il area where he performs legal services in the areas in which he provided expert testimony including bylaws and the Illinois Hospital Licensing Act. His rate is comparable to that of comparable attorneys, Gerald Goldberg and Thomas Conley (Ex. B ¶¶ 9-12), who has comparable education, training and expertise, practices in the same areas as Emmons. Goldberg's hourly rate charged to Plaintiffs in 2008 and 2009 at a time when he had practiced 40 years in connection with NCH's peer review proceedings was $400.00 per hour. Conley's hourly rate was $450 in 2013 at a time when he had practiced 33 years. (Ex. B ¶¶ 10-11).

Plaintiffs' wage loss economic expert Pearson submitted an invoice for his deposition time and expenses charging $300 an hour. This is the same hourly rate Pearson charged Plaintiffs for his preparation of an expert report and opinions. Indeed, although Pearson's education, training and expertise in performing wage loss analyses in discrimination cases exceeds that of Defendants' expert, Snow, who practices in the Chicago area as Pearson does, and who has charged Defendants $ 600 per hour and submitted an invoice for her deposition time listing an hourly rate of $600 per hour even though she admits to never having performed a wage loss analysis in a discrimination case. (Ex. C ¶ 9). Further, Defendants' expert Burroughs, who concedes he is not qualified to provide an economic analysis and is not an economist but nevertheless submitted a rebuttal to Pearson's damages report, has submitted an invoice charging $500 an hour. (Ex. C ¶ 10). Under these circumstances, Plaintiffs' experts' hourly rate charged in their invoices in connection with seeking compensation from Defendants for their preparation for their depositions, for the time they were deposed and for their time in responding to discovery sought by Defendants from them are reasonable.

Similarly, the time Plaintiffs' experts spent in preparing for their depositions was

reasonable. Wade's invoice includes a total of 21.3 hours. 2.9 hours was spent in reviewing the 194-page deposition transcript in connection with providing an errata sheet and certification to the transcript's accuracy, time and costs which courts in this district award. *See e.g. Fox v. Will County,* No. 04 C 7309, 2009 WL 723385, at * 4 (N.D. Ill. March 11, 2009); *LG Electronics USA v. Whirlpool Corp*., No. 08 C 0242, 2011 WL 5008425, *5 (N. D. Ill. Oct. 20, 2011). Wade also claimed 3.0 hours for travel to and from South Bend Indiana and Chicago for his deposition, which courts in this district compensate. *See Fairley v. Andrews,* No. 03 C 5207, 2008 WL 961592, *5 (N.D. Ill. April 8, 2008); *LG Electronics,* 2011 WL 5008425, *5. Wade's invoice also included the 5.5 hours he was deposed which courts in this district compensate. *See Waters v. City of Chicago,* 526 F. Supp. 2d 899, 900-01 (N.D. Ill. 2007); *Profile Prod. v. Soil Mgmt. Tech., Inc.,* 155 F. Supp. 2d 880, 886 (N.D. Ill. 2001).

Subtracting the 11.4 hours (2.9 + 3 + 5.5) from the total of 21.3 listed on his invoice, leaves 9.9 hours Wade spent in preparing for Defendants' discovery of him by conducting his deposition. Wade by necessity reviewed his own 16-page report based upon voluminous documentation and depositions, but as well reviewed Defendants' 70 page single spaced rebuttal expert report of Jon Burroughs who rebutted certain of Wade's opinions. Wade's invoice for $ 13, 988.25 is reasonable. Further, Wade's expenses in the amount of $ 1, 634.25 consisting of travel expenses from South Bend Indiana to Chicago and back, a one-night hotel stay, taxi rides and food are all supported by documentation, are reasonable and should be compensated.

Emmons' invoice identifies a total of 25 hours. Defendants deposed Emmons for 5.5 hours on October 21 and Emmons claimed 6 hours for travel time to his deposition from Champaign IL and back on the day of his deposition, for a total of 11.5 hours on October 21. The

balance of Emmons' invoice claimed 13.5 hours for preparation of his deposition. Emmons not only had to review his initial August 14 report and his September 24 rebuttal report, but also had to review the rebuttal report of Jon Burroughs directed at Emmons' opinions and report. Emmons also claimed $ 163.30 in mileage for his drive from Champaign IL to Chicago and back on the day of his deposition (approximately 142 mi. each way for a total of 284 mi. roundtrip x .575, the IRS rate for mileage in 2015) and $ 36.00 for a parking fee that is supported by a receipt. It is the practice of Emmons' firm to charge interest on outstanding invoices which his invoice shows to be $ 787.97. Emmons' invoice in the amount of $ 10, 362.27 is reasonable and should be paid.

Pearson claimed 39 hours on his invoice. He claimed 0.75 hours for the review of the 131-page transcript of his deposition, which as noted above is compensable in this district. *See e.g. Fox v. Will County,* No. 04 C 7309, 2009 WL 723385, at * 4 (N.D. Ill. March 11, 2009); *LG Electronics USA v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, *5 (N. D. Ill. Oct. 20, 2011). Defendants' deposed Pearson for 5.25 hours which courts in this district compensate. *See Waters v. City of Chicago,* 526 F. Supp. 2d 899, 900-01 (N.D. Ill. 2007); *Profile Prod. v. Soil Mgmt. Tech., Inc.,* 155 F. Supp. 2d 880, 886 (N.D. Ill. 2001). Subtracting the deposition transcript review and deposition time from 39, leaves 33 hours Pearson spent in reviewing new discovery related to his report and the rebuttal reports of Lisa Snow and Jon Burroughs preparing for his deposition. A review of Pearson's report and its attachments reflect that Pearson utilized approximately 21 hours reviewing substantial documentation, his detailed calculations and analyses resulting in 12 separate exhibits and 6 Appendices of financial and economic calculations supporting his damages report, deposition testimony and documents produced in discovery after Pearson's report. The balance of his deposition preparation, 12 hours was spent

in reviewing Defendants' expert report of Lisa Snow filed in rebuttal to Pearson's report, including the treatises cited by Snow and case law relent to the issue of mitigation of damages in discrimination cases addressed by Snow. Under these circumstances, given the detailed nature of Pearson's calculations, the additional discovery produced and Defendants' rebuttal reports, Pearson's preparation time for his deposition was eminently reasonable and his invoice in the amount of $ 11, 700 is reasonable. Pearson's claimed $ 20.00 in parking expense which is supported by a receipt is also reasonable.

### V.       RULE 37.2 COMPLIANCE

Plaintiffs' first submitted the invoices of their experts Wade, Emmons and Pearson who were deposed by Defendants on November 16 and 18, 2015. (Ex. I (1)). The invoices were not paid. Plaintiffs' counsel spoke to Defense counsel on March 15, 2016 regarding the unpaid invoices and forwarded copies of the invoices again on March 16, 2016. (*Id.*) No payment was made and Defendants did not respond to the request for payment. Plaintiffs' counsel again contacted Defense counsel on April 19, 2016 regarding payment of Plaintiffs' experts' unpaid invoices associated with their depositions. (Ex. I (2).

On April 22, 2016, Defense counsel Ann Maher responded to Plaintiffs' April 19 correspondence raising certain objections to the experts' invoices. On June 3, 2016, Plaintiffs' counsel responded to Defense counsel's objections, citing case law demonstrating that the objections raised were not cognizable in this district. (Ex. I (3)). No response to the cases cited in Plaintiffs' June 3 email has been received to date. addressing the cases Plaintiffs' counsel cited noting that Defense counsel's objections were not well taken was received. Thereafter, Plaintiffs' counsel and Defense counsel exchanged emails in which Defendants proposed paying arbitrarily

13

reduced amounts on the experts' invoices which ignored the fact that the Defendants' objections were not cognizable on June 14 (10:16 a.m., 11:21 a.m., 11:40 a.m.). During this process, Plaintiffs' counsel noted that Defendants' experts submitted invoices which included time spent with Defense counsel in preparing for their depositions, time which is not shifted to Plaintiffs under *LK Nutrition, LLC v. Premier Research Labs, LP,* No. 12 C 7905, 2015 WL 4466632, *2 (N.D. Il July 21, 2015). Plaintiffs' counsel agreed to have their experts review their invoices and remove any time claimed that involved preparation for their deposition with Plaintiffs' counsel. On June 21, 2016, Plaintiffs' counsel forwarded a revised invoice for expert Robert Wade and requested that Defense counsel advise whether they were prepared to pay Wade's invoice as revised. (Ex. I (3)). No payment or correspondence indicating that Defendants agreed to pay Wade's invoice as revised was received. On June 24, Plaintiffs' counsel again emailed Defense counsel regarding payment of Wade's invoice and Defendants' willingness to drop the objections to Emmons' and Pearson's invoices that were unsupported by the case law provided by Plaintiffs' counsel. (Ex. I (4)). No agreement to pay the invoices of Plaintiffs' experts nor payment of those invoices has been forthcoming as of the date of filing this Motion.

## VI.    CONCLUSION

For the reasons set forth above and pursuant to F.R.Civ. P. 26 (b) (4) (E), Plaintiffs respectfully request that this Court order Defendants' to pay immediately the invoices of Plaintiffs' experts Robert A. Wade, Keith E. Emmons and William M. G. Pearson in connection with their depositions.

By: /s/ <u>Susan Bogart</u>
Plaintiffs' Attorney

14

Susan Bogart
Law Offices of Susan Bogart
70 West Madison St., Ste. 1400
Chicago, IL 60602
Tele: 312-214-3271
Fax: 866-567-1199
sbogart514@aol.com